UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER BARRAGAN,<br><br>        Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>        Defendant. | No. 2:15-cv-2060 DB<br><br><br>ORDER |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment.[1] Plaintiff asserts that the Administrative Law Judge erred in rejecting the subjective testimony and in evaluating the medical opinion evidence. For the reasons explained below, plaintiff's motion is denied, defendant's cross-motion is granted, and the decision of the Commissioner of Social Security ("Commissioner") is affirmed.

PROCEDURAL BACKGROUND

On September 17, 2010, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on February 28, 2006.

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 8 & 10.)

1

(Transcript ("Tr.") at 125-39.)  Plaintiff's applications were denied initially, (id. at 81-89), and upon reconsideration.  (Id. at 93-97.)

Thereafter, plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on November 22, 2011.  (Id. at 52-70.)  In a decision issued on January 31, 2012, the ALJ found that plaintiff was not disabled.  (Id. at 26.)  After the Appeals Council upheld the ruling, plaintiff filed a civil action in this court.  (Id. at 770-71.)  On March 18, 2014, the court granted plaintiff's motion for summary judgment and remanded the matter for further proceedings.  (Id. at 792.)

Another hearing was held on September 3, 2014, before an ALJ.  (Id. at 726-49.)  Plaintiff was represented by an attorney and testified at the administrative hearing.  (Id. at 726-27.)  In a decision issued on March 12, 2015, the ALJ again found that plaintiff was not disabled.  (Id. at 720.)  The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since February 28, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: epilepsy/seizure disorder, lumbosacral strain, obesity, generalized anxiety disorder and depressive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light exertional work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she has additional mental limitations where she is limited to simple, unskilled work with only occasional contact with her fellow employees or the public, and environmental limitations for seizure precautions in which she must avoid any work with heights or dangerous machinery.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

////

> 7. The claimant was born on June 13, 1979, and was 26 years old, on the alleged disability onset date, and is currently 35 years old, both ages of which are categorized as a younger individual age 18-49 (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has a high school equivalent education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 690-720.)

On August 21, 2015, the Appeals Council denied plaintiff's request for review of the ALJ's March 12, 2015 decision. (Id. at 670-72.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on September 30, 2015. (ECF No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d

1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion asserts the following two principal claims: (1) the ALJ's treatment of the subjective testimony constituted error; and (2) the ALJ's treatment of the medical opinion evidence constituted error.[2] (Pl.'s MSJ (ECF No. 21-1) at 10-15.[3])

////

////

---

[2] The court has reordered plaintiff's arguments for sake of clarity and efficiency.
[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

I.      **Subjective Testimony**

Plaintiff argues that the ALJ disregarded the observations of plaintiff's family members and did "not trust the statements of the plaintiff." (Id. at 14.)  The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted).  "The clear and convincing standard is the most demanding required in Social Security cases."  Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).  "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  Valentine, 574 F.3d at 693 (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains."  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is

supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

Moreover, the testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect her activities must be considered and discussed by the ALJ. Robbins, 466 F.3d at 885; Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232. Persons who see the claimant on a daily basis are competent to testify as to their observations. Regennitter, 166 F.3d at 1298; Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919.

Here, the ALJ considered plaintiff's testimony and the testimony of plaintiff's mother.[4] (Tr. at 714.) In this regard, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged but that plaintiff's statements concerning the intensity, persistence, frequency, and limiting effects of those symptoms were "not credible" to the extent they were inconsistent with the ALJ's residual functional capacity assessment. (Id. at 715.)

The ALJ's decision noted "several discrepancies in the record with respect to the claimant's allegations of continuous uncontrollable seizures and increased frequency of panic attacks," and plaintiff's reported daily activities. (Id. at 714.) In this regard, plaintiff testified that for "about three years," she has suffered "migraines about two times per week," which made her nauseous, prevented her from opening her eyes, and required her to lie in a dark room "for a couple hours." (Id. at 740.) Four or five hours after plaintiff took her medication the symptoms would "ease up." (Id.)

---

[4] Although plaintiff refers to testimony from plaintiff's family members, plaintiff provided no citation in support of this argument and the court was unable to locate any additional statements aside from a statement offered by plaintiff's mother. However, any error by the ALJ in failing to discuss additional lay witness testimony would be harmless. See Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012) ("an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims.").

Plaintiff also testified that she suffered seizures "[t]wo, three times a week." (Id. at 741.) Plaintiff stated that, according to her husband, a seizure would last "a couple of hours." (Id. at 743.) Moreover, plaintiff testified that she suffered "troubling anxiety symptom[s]," once a week. (Id. at 743-44.) She allegedly suffered this anxiety every time she left the house. (Id. at 744.)

However, an October 16, 2010, "FUNCTION REPORT-ADULT" form completed by plaintiff asked plaintiff to described what she did from the time she woke until the time she went to bed. (Id. at 189.) Plaintiff answered:

> Take my kids to school. Get them up an[d] ready to go[.] [C]ome back home depending on how I feel. Come home clean a lil watch t.v., [r]ead an take a nap, get the kids from school come home fix lunch an rest a lil, help kids with homework, baths, dinner nite time.

(Id.) Plaintiff also stated that she prepared food or meals, "daily," and that it took her "1 hr." (Id. at 191.) Plaintiff also spent "3 hours every other day" cleaning and doing laundry. (Id.) Moreover, plaintiff left the house "2 x day." (Id. at 192.) Plaintiff went grocery shopping once a week for "2 hrs." (Id.) She engaged in reading "3 x a day." (Id. at 193.) Plaintiff's mother completed a similar form and her statements echoed plaintiff's. (Id. at 202-09.)

Plaintiff completed another "FUNCTION REPORT-ADULT" form on February 23, 2011.[5] (Id. at 210.) Therein, plaintiff described her daily activities as:

> Wake up. [G]et kids ready for school[.] [G]o with my mom to walk kids to school[.] Come home try to do housework[.] Got get kids[.] Fix dinner[.] Go to bed.

(Id. at 210.) Plaintiff also stated that she did laundry and cleaning for three hours a day and went outside twice a day. (Id. at 212-13.)

The court is well aware that "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.'" Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). "Rather, a Social Security claimant's activities of daily living may discredit her testimony regarding symptoms only when either (1) the activities 'meet the threshold for

---

[5] That same day, plaintiff completed a "SEIZURE QUESTIONNAIRE" form stating that she was having seizures "4 x a week." Plaintiff alleged that, after suffering a seizure, she could not resume normal activities for "3 hrs." (Id. at 199.)

7

transferable work skills' or (2) the activities contradict her testimony." Schultz v. Colvin, 32 F.Supp.3d 1047, 1059 (N.D. Cal. 2014) (quoting Orn, 495 F.3d at 639); see also Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) ("An ability to perform such activities may be seen as inconsistent with the presence of a condition which would preclude all work activity."); Jonker v. Astrue, 725 F.Supp.2d 902, 915 (C.D. Cal. 2010) (inconsistencies between daily activities and alleged limitations is a valid reason to reject plaintiff's credibility).

Here, the ALJ found that plaintiff reported activities of daily living contradicted her testimony and the testimony of her mother. That is a specific and legitimate reason for rejecting plaintiff's testimony, and a germane reason for rejecting the testimony of plaintiff's mother. Moreover, as documented above, that finding is supported by substantial evidence in the record.

Accordingly, the court finds that plaintiff is not entitled to summary judgment with respect to the claim that the ALJ's treatment of the subjective testimony constituted error.

## II. Medical Opinion Evidence

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not

accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

Here, plaintiff first argues, without any citations in support, that "[t]he ALJ is incorrect that plaintiff had no severe condition." (Pl.'s MSJ (ECF No. 21-1) at 12.) As noted above, however, the ALJ found that plaintiff's severe impairments included epilepsy/seizure disorder, lumbosacral strain, obesity, generalized anxiety disorder and depressive disorder. (Tr. at 690.)

Next plaintiff argues that the ALJ "essentially rejected the opinions of plaintiff's treating and his own consultative examining doctors," (Pl.'s MSJ (ECF No. 21-1) at 12), when the ALJ stated:

> In determining whether the severity of the claimant's seizures meets or equals either of these listing sections, the undersigned has given a longitudinal review of the medical record over time with particular emphasis on whether the frequency and nature of the claimant's seizures have been adequately documented and whether her compliance to medication and her response to medication has been adequately documented.  In both of these cases, the undersigned is unable to find sufficient evidence to show that the claimant has had documented seizures that occur more frequently than once a week or even once a month in spite of at least three months of prescribed treatment.  As discussed above, the claimant has had recurrent treatment for seizures, but the frequency of chronicity of her seizures has mainly been undocumented and unverified in the record.  The undersigned further notes that there is, in fact, several long-term gaps in reported seizure activity throughout the examination record.

(Tr. at 706.) In this regard, plaintiff argues that her "seizures have been documented for decades," and refers to, again without citation, multiple instances in which plaintiff allegedly suffered a seizure. (Pl.'s MSJ (ECF No. 21-1) at 13.)

Plaintiff's argument, however, misunderstands the ALJ's finding. In this regard, the ALJ found that plaintiff's epilepsy/seizure disorder constituted a severe impairment. The portion of the ALJ's decision cited by plaintiff concerned the ALJ's consideration of Listing 11.02 and Listing 11.03 at step three of the sequential evaluation. (Tr. at 705-08.) Under the regulations applicable at the time of the ALJ's decision, Listing 11.02 and Listing 11.03 could "be applied

only if the impairment persist[ed] despite the fact that the individual [was] following prescribed antiepileptic treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00.

In this regard, what the ALJ's quoted language reflects, and what plaintiff fails to dispute, is that the ALJ was unable to find that plaintiff suffered seizures of sufficient frequency and duration "in spite of at least three months of prescribed treatment." (Tr. at 706.) The ALJ's decision discussed this finding at length.[6]

For example, the ALJ's decision noted that on July 24, 2008, Dr. John Bissell treated plaintiff because she was allegedly suffering "3 GM sz per week." (Id. at 264.) However, Dr. Bissell noted that plaintiff experienced "perfect sz control for years previously." (Id.) Moreover, Dr. Bissell followed up with plaintiff on April 23, 2009, May 14, 2009, May 29, 2009, and July 16, 2009, and "did not report any documented seizures." (Id. at 707.) The ALJ also noted the "lack in the records of recurrent monitoring of serum drug levels to confirm the efficacy" of the anticonvulsive medications. (Id.) Moreover, on April 16, 2014, plaintiff's "medication compliance was also noted to be only 'marginal.'" (Id.)

For the reasons stated above, the court finds that plaintiff has failed to establish that the ALJ's treatment of the medical opinion evidence constituted error. Accordingly, plaintiff is also not entitled to relief with respect to this claim.

## CONCLUSION

The court has found that plaintiff is not entitled to summary judgment on any claim.

////

////

////

////

////

---

[6] The ALJ's decision also noted the frequency of plaintiff's seizures was "based solely on the reports" of plaintiff and her mother. (Tr. at 707.) The court previously found that the ALJ permissibly discredited plaintiff's testimony and the testimony of her mother. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.").

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 21) is denied;

2. Defendant's cross-motion for summary judgment (ECF No. 25) is granted;

3. The decision of the Commissioner of Social Security is affirmed; and

4. The Clerk of the Court shall enter judgment for defendant, and close this case.

Dated: March 15, 2017

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\barragan2060.ord